```
                                        ┌─────────────────────────────┐
                                        │ USDC SDNY                   │
                                        │ DOCUMENT                    │
UNITED STATES DISTRICT COURT            │ ELECTRONICALLY FILED        │
SOUTHERN DISTRICT OF NEW YORK           │ DOC #: _____         │
- - - - - - - - - - - - - - - - -x      │ DATE FILED: 2-5-09          │
                              :         └─────────────────────────────┘
FRANK DOUGLAS,
                              :
          Plaintiff,
                              :          OPINION
     - against -
                              :          06 Civ. 6134 (DC)
THE CITY OF NEW YORK et al.,
                              :
          Defendants.
                              :
- - - - - - - - - - - - - - - - -x
```

**APPEARANCES:**          ROSE M. WEBER, Esq.
                          225 Broadway, Suite 1607
                          New York, New York   10007
                          Attorney for Plaintiff

                          MICHAEL A. CARDOZO, Esq.
                          Corporation Counsel of the City of New York
                               By:  Hillary A. Frommer, Esq.
                                    Senior Counsel
                                    Shawn D. Fabian, Esq.
                                    Assistant Corporation Counsel
                          100 Church Street
                          New York, New York   10007
                          Attorney for Defendants

**CHIN, District Judge**

On November 6, 2004, plaintiff Frank Douglas was arrested by members of the New York City Police Department (the "NYPD"). In this civil rights case, he seeks damages, alleging that he was arrested without probable cause and subjected to two unlawful strip searches. He also asserts a municipal liability claim against the City of New York (the "City"), arguing that the NYPD has a pattern and practice of unlawfully arresting minorities on drug charges so that it can meet arrest quotas.

Defendants move for summary judgment, arguing, based on their account of what happened on the day in question, that the

police acted lawfully and appropriately, and therefore no reasonable jury could find for plaintiff.  Defendants deny that any strip search took place.

Defendants ignore, however, the irreconcilable conflicts between the parties' accounts of what happened on November 6, 2004.  Defendants simply ask this Court to accept wholesale their version of events and rule in their favor.  In so doing defendants ignore well-settled law prohibiting the Court, on a motion for summary judgment, from resolving factual disputes or making credibility determinations.  Accordingly, with the few exceptions explained below, defendants' motion for summary judgment is denied.

**BACKGROUND**

## A.  Facts

The parties dispute almost every issue of material fact in this case.  For the purposes of this motion, however, the factual disputes have been resolved in plaintiff's favor.  As drawn from the statements of material facts, deposition transcripts, and exhibits submitted by the parties, the facts are as follows:

On November 6, 2004, Detectives Jose Marrero, Lisandro Rivera, and Jorge Figueroa were engaged in a narcotics investigation in the Bronx under the supervision of Sergeant Christopher Clark.  (Defs. Statement ¶ 1).[1]  At approximately

---

[1]     Unless otherwise noted, the Court cites defendants' rule 56.1 statement only for facts that plaintiff admitted

7:00 a.m. they went to the vicinity of 183rd Street and Creston
Avenue to conduct surveillance.  (Id. ¶ 7). Sergeant Clark and
Detectives Marrero and Rivera had observed drug transactions take
place in that area before.  (Id. ¶¶ 9-10, 12). Detective Rivera
observed the area from a car parked on the northwest corner of
183rd Street and Creston Avenue; the other officers were
stationed in the vicinity, but did not have a direct view of what
was happening.  (Id. ¶¶ 13-14).

        At approximately 8:00 a.m., plaintiff went to pick up
his infant son from the boy's mother's apartment at 2420 Grand
Avenue in the Bronx. (2008 Pl. Dep. at 20-26). He had more than
$500 in cash with him because he intended to take his son
shopping.  (Id. at 23-24). When plaintiff arrived at the
apartment, his son's mother told him to come back in a half hour
because the son was not ready.  (Id. at 23, 25). Plaintiff
recalled that he had dropped off a shirt at a nearby dry cleaner
on Creston Avenue and decided to go pick it up.  (Id. at 25-26).
When he arrived at the dry cleaner, the owner was just opening it
up for the day and asked plaintiff to wait outside for a few
minutes so that he could turn on the lights, etc.  (2007 Pl. Dep.
at 45).

        Plaintiff was standing outside for approximately three
minutes when Antoine Hopkins approached him to ask him where he
purchased the jacket he was wearing.  (Id. at 45-46). Plaintiff
had met Hopkins at least once before, and had seen him on several

─────────────

without qualification.

occasions, and evidently they were arrested together on a drug charge in 2003, the circumstances of which are not explained in the record. (Id. at 46; 2008 Pl. Dep. at 30, 33). They spoke for less than a minute, and then Hopkins walked across the street while plaintiff continued to wait for the dry cleaner to open. (2008 Pl. Dep. at 33-34). Plaintiff did not pay attention to where Hopkins went, and he and Hopkins did not engage in any drug activity. (Id. at 35; 2007 Pl. Dep. at 44-48, 98-99). Plaintiff did not speak to anyone else while he waited. After plaintiff waited in front of the dry cleaner for several more minutes, a car pulled up and two police officers got out and arrested him. (2008 Pl. Dep. at 35-36).

One of the officers was Detective Marrero. (Marrero Dep. at 55). No narcotics were recovered from plaintiff; a pat-down recovered only $505 in cash. (Defs. Statement ¶ 63). Detective Marrero walked plaintiff to the prisoner van, which was occupied by Sergeant Clark and non-party Detectives Vasquez and Adorno. (Id. ¶¶ 65, 71). While plaintiff was standing at the back of the van facing inside the van, a heavyset officer with salt-and-pepper hair pulled plaintiff's pants and underwear down to conduct a strip search -- on the street, in broad daylight. (2007 Pl. Dep. at 56-57).

Plaintiff was taken to the 46th precinct in the Bronx where he was strip-searched again. (Pl. Statement ¶ 82). It is unclear whether the same officer performed both strip searches or whether different officers did so. (Compare id. ("Plaintiff

- 4 -

claims that at the precinct, the heavy-set officer with salt and pepper hair searched him.") with 2008 Pl. Dep. at 59 ("Q.  And which officer searched you?  A.  The big one.")).

On November 6, 2004, Hopkins and plaintiff were both charged with criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree.  (Defs. Statement ¶ 86).  Plaintiff pled not guilty to the charges.  (2008 Pl. Dep. at 84).

From November 2004 until February 2005 plaintiff appeared in court approximately five or six times.  (2007 Pl. Dep. at 76).  All charges against plaintiff were dropped on March 9, 2006, for reasons that are not explained in the record.  (2008 Pl. Dep. at 84).

## B.  Procedural History

Plaintiff filed the complaint in this action on August 14, 2006, alleging that Detectives Marrero and Rivera violated his constitutional rights.  He also alleged a claim of municipal liability against the City.  On January 3, 2007, plaintiff amended the complaint to add Sergeant Clark as a defendant.  On June 18, 2007, plaintiff amended the complaint for a second time to add Detective Figueroa as a defendant based on plaintiff's counsel's belief that Detective Figueroa may have been the officer who strip-searched him on the street.[2]

---

[2]    This belief was based on observations made by plaintiff's counsel of Detective Figueroa at his June 8, 2007

- 5 -

The complaint, as amended, asserts claims pursuant to
42 U.S.C. § 1983 for false arrest, unlawful search, malicious
prosecution, malicious abuse of process, and denial of the right
to a fair trial. It also asserts a claim against the City for
municipal liability pursuant to <u>Monell v. Department of Social
Services</u>, 436 U.S. 658 (1978). Plaintiff essentially alleges
that defendants conspired to arrest plaintiff without probable
cause so as to meet arrest quotas established by the NYPD.

The parties completed discovery. This motion followed.

## DISCUSSION

Defendants move for summary judgment as to every claim.
Because numerous genuine issues of material fact exist for trial,
defendants' motion is denied as to most of plaintiff's claims.
As discussed below, however, defendants' motion is granted as to
plaintiff's malicious abuse of process and malicious prosecution
claims, and granted in part as to plaintiff's unlawful search
claim.

## A.  Summary Judgment Standard

Summary judgment is appropriate if the pleadings,
affidavits, and disclosures that form the record establish that
there is no "genuine issue as to a material fact and that the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(c). Summary judgment should be denied "if the evidence is
such that a reasonable jury could return a verdict" in favor of

---

deposition.

the non-moving party. See NetJets Aviation, Inc. v. LHC
Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir. 2008). In deciding
a motion for summary judgment, the Court must construe the
evidence in the light most favorable to the non-moving party and
draw all reasonable inferences in the non-moving party's favor.
In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir.
2008). The non-moving party cannot, however, "escape summary
judgment merely by vaguely asserting the existence of some
unspecified disputed material facts, or defeat the motion through
mere speculation or conjecture." W. World Ins. Co. v. Stack Oil,
Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal citations and
quotations omitted).

In deciding a motion for summary judgment, the role of
the Court is not to ask whether "the evidence unmistakably favors
one side or the other but whether a fair-minded jury could return
a verdict for the plaintiff on the evidence presented." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Because the
Court's role is limited in this respect, it may not make factual
findings, determine credibility of witnesses, or weigh evidence.
See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir.
2005); Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619
(2d Cir. 1996); United States v. Rem, 38 F.3d 634, 644 (2d Cir.
1994).

## B. **False Arrest Claim**

Plaintiff brings a claim pursuant to § 1983 for false
arrest. Defendants argue that the officers had probable cause to

arrest plaintiff, and therefore summary judgment as to the false arrest claim is appropriate. Defendants' argument, however, is predicated upon the Court accepting wholesale defendants' version of events and ignoring the fact that plaintiff disputes almost every aspect of what defendants maintain happened that day. Accordingly, defendants' motion for summary judgment as to the false arrest claim is denied.

## 1. **Applicable Law**

The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York law. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. See Posr v. Doherty, 944 F.2d 91, 97 (2d Cir. 1991).

Probable cause to arrest is a complete defense to an action for false arrest, even where a person is ultimately acquitted, because it constitutes justification. See Weyant, 101 F.3d at 852 (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); see also Montalvo v. Jennings, No. 93 Civ. 8351 (KMW), 1996 WL 148483, at *2 (S.D.N.Y. Apr. 1, 1996). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person

- 8 -

of reasonable caution in the belief that an offense has been committed by the person to be arrested." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). The Second Circuit has held that a determination of whether probable cause to arrest existed may be made "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852 (citations omitted). Where there is conflicting evidence as to whether probable cause existed, however, the decision should be made by a jury. See Wu v. City of New York, 934 F. Supp. 581, 588 (S.D.N.Y. 1996) ("Where the defense of probable cause is based on conflicting evidence, the question is resolved by the jury, but where the facts leading up to the arrest are undisputed, the existence of probable cause is for the court to determine as a matter of law.") (internal citation and quotations omitted).

## 2.  Application

Here, genuine issues of material fact exist for trial. According to plaintiff, he was standing in front of a dry cleaner when he was approached by Hopkins, spoke to him for less than a minute about plaintiff's jacket, and was arrested minutes later on drug charges despite having engaged in no illegal activity. If a jury were to credit plaintiff's version of events, it would likely conclude that the police lacked probable cause to arrest plaintiff.

Defendants contend that plaintiff was standing in front of a building where officers know drug transactions take place,

- 9 -

engaged in several conversations with Hopkins and drug buyers, and acted as a look-out for several drug transactions. On this motion for summary judgment, however, I must accept plaintiff's version -- given under oath -- as true. See Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."); Weyant, 101 F.3d at 855 ("[T]he district court was not entitled, on a motion for summary judgment, to credit [defendants'] version of the facts and enter judgment based on its own view that their version was more likely true."). Accordingly, because a reasonable jury, after making factual findings and credibility determinations, could find that plaintiff was arrested without probable cause, defendants' motion for summary judgment as to the claim for false arrest is denied.

## C. **Qualified Immunity As to the False Arrest Claim**

As an alternative to dismissal of the false arrest claim on the basis that defendants had probable cause to arrest plaintiff, defendants also move for summary judgment as to the false arrest claim on the basis of qualified immunity. Again, however, as the parties dispute what happened on November 6, 2004, I conclude that defendants are not entitled to summary judgment, even on the basis of qualified immunity.

### 1. **Applicable Law**

The doctrine of qualified immunity shields police officers from personal liability for "official conduct that 'does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ricciuti v. New York City Transit Auth., 124 F.3d 123, 127 (2d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  An officer is therefore entitled to qualified immunity for false arrest:  (1) if it was objectively reasonable for the officer to believe that there was probable cause to make the arrest; or (2) if reasonably competent police officers could disagree as to whether there was probable cause to arrest.  See Ricciuti, 124 F.3d at 128.  In qualified immunity cases, the focus is not on the "correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene."  Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).

Although immunity is usually an issue for the court, where the facts are disputed, "jury consideration is normally required."  Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994); accord Weyant, 101 F.3d at 852 (holding summary judgment is only appropriate if no dispute exists "as to the pertinent events and the knowledge of the officers").  Defendants are not entitled to summary judgment "if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable."  Lennon, 66 F.3d at 420.  An officer's actions are objectively unreasonable if no reasonably competent officer would have acted the same way under similar circumstances.  Id. at 420-21.

## 2. **Application**

Construing the evidence in the light most favorable to plaintiff, I conclude that a reasonable jury, if it credited plaintiff's account of what happened on the day in question, could find that "defendants' actions were objectively unreasonable." Cf. id. at 420. According to plaintiff, when he was arrested he was standing in front of a dry cleaner waiting to pick up a shirt -- not, as the police claim, standing in front of a known drug den acting as a look-out. Defendants' motion for summary judgment as to the false arrest claim on the basis of qualified immunity is therefore denied.

## D. **Malicious Prosecution Claim**

Based on the record before the Court, I must grant defendants' motion for summary judgment as to the malicious prosecution claim, as there is no evidence that plaintiff has satisfied one of the required elements.

### 1. **Applicable Law**

To prevail on a § 1983 malicious prosecution claim, a plaintiff must establish the elements of malicious prosecution under state law, and then show that his Fourth Amendment rights were violated after legal proceedings were initiated. See Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted).

To state a claim for malicious prosecution under New York law, a plaintiff must prove:  "(1) the initiation or

continuation of a criminal proceeding against plaintiff; (2)
termination of the proceeding in plaintiff's favor; (3) lack of
probable cause for commencing the proceeding; and (4) actual
malice as a motivation for defendant's actions." Murphy v. Lynn,
118 F.3d 938, 947 (2d Cir. 1997) (citation omitted).  For the
constitutional element, plaintiff must show a seizure or other
"perversion of proper legal procedures" implicating the
plaintiff's personal liberty and privacy interests under the
Fourth Amendment.  Washington v. County of Rockland, 373 F.3d
310, 316 (2d Cir. 2004).  As with a false arrest claim, the
existence of probable cause is a complete defense to a claim of
malicious prosecution.  See Savino v. City of New York, 331 F.3d
63, 72 (2d Cir. 2003).

In general, "[o]nce a criminal defendant has been
formally charged, the chain of causation between the officer's
conduct and the claim of malicious prosecution is broken by the
intervening actions of the prosecutor, thereby abolishing the
officer's responsibility for the prosecution."  Williams v. City
of New York, No. 02 Civ. 3693 (CBM), 2003 U.S. Dist. LEXIS 19078,
at *6 ((S.D.N.Y. Oct. 23, 2003) (citing Townes v. City of New
York, 176 F.3d 138, 147 (2d Cir. 1999)).  There is an exception,
however:  In a situation where a police officer is accused of
providing false information to a prosecutor that "influences a
decision whether to prosecute, he may be held liable for
malicious prosecution."  Chimurenga v. City of New York, 45 F.
Supp. 2d 337, 343 (S.D.N.Y. 1999); accord White v. Frank, 855

- 13 -

F.2d 956, 962 (2d Cir. 1988) (holding that public prosecutor's role does not shield officer from civil liability where officer's statements to prosecutor were "knowingly and maliciously false").

## 2. Application

I address each element in turn.

### (a) Did Defendants Initiate a Proceeding Against Plaintiff?

It is undisputed that none of the individual defendants issued the criminal complaint against plaintiff or determined what the criminal charges against him would be. (Pl. Statement ¶¶ 87-90). If any of the defendants misled the prosecutor by providing false statements regarding plaintiff's conduct, however, then they could be liable for malicious prosecution. Here, that is precisely what plaintiff alleges, and if a jury credits plaintiff's testimony, it could reasonably conclude that defendants initiated a proceeding against him.

### (b) Did the Proceeding Terminate in Plaintiff's Favor?

There is no evidence in the record before this Court as to the circumstances of the dismissal of charges against plaintiff. Defendants did not address the point in their brief, but rather reserved their right to argue whether the dismissal of charges against plaintiff constitutes a favorable dismissal if their summary judgment motion was denied. (Defs. Brief at 15 n.2). On a motion for summary judgment, it is the moving party's

burden to prove that it is entitled to judgment as a matter of law; defendants have failed to do so as to this element. Moreover, the Second Circuit has held that "when the grounds for the dismissal of a criminal proceeding are unclear, New York courts consider whether the proceeding was terminated in plaintiff's favor to be a question of fact that prevents summary judgment."   Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994).

### (c)  **Did Defendants Have Probable Cause?**

As discussed above, there is a disputed issue of fact as to whether defendants had probable cause to arrest plaintiff, making summary judgment inappropriate on this basis.

### (d)  **Were Defendants Motivated By Actual Malice?**

The Second Circuit has held that where there is a disputed issue of fact as to whether probable cause existed, summary judgment on the malice requirement is inappropriate.   See Ricciuti, 124 F.3d at 131 (holding that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment"); Rounseville, 13 F.3d at 631 (holding that "our conclusion that the lack of probable cause presents a jury question likewise suggests that the existence of malice cannot be resolved through summary judgment"); accord Chimurenga, 45 F. Supp. 2d at 343 ("Where, as here, there is a triable issue as to probable cause, there will almost always be a triable issue as to malice . . . ."). Accordingly, there is a triable issue of fact as to this element.

(e)   **Did Defendants' Conduct Amount to a "Perversion of**

**Proper Legal Procedures?"**

To succeed on a § 1983 claim for malicious prosecution under the Fourth Amendment, in addition to the four requirements discussed above, plaintiff must show a seizure or other "perversion of proper legal procedures" implicating his rights under the Fourth Amendment.  Washington, 373 F.3d at 316.  The Second Circuit has held that this requirement is satisfied either through the existence of a warrant, in which case the arrest itself constitutes the unlawful seizure, or an arraignment, in which case any post-arraignment deprivation of liberty constitutes the unlawful seizure.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995).

Neither party briefed this element.  As there is no indication that plaintiff's arrest was made pursuant to a warrant, he can only meet the constitutional requirement if he suffered a post-arraignment deprivation of liberty such as post-arraignment confinement or travel restrictions.  See Thomas v. City of New York, No. 05 Civ. 6449 (LTS), 2008 U.S. Dist. LEXIS 61555, at **12-14 (S.D.N.Y. Aug. 12, 2008) (discussing post-arraignment constitutional deprivations).  In his complaint and brief plaintiff claims that he was incarcerated for twenty-four hours after his arrest.  (Compl. ¶ 20; Pl. Mem. at 20 n.6).  Although he does not indicate whether his incarceration was before or after he was arraigned, in all likelihood it was before

he was arraigned, when bail would have been set.  See, e.g.,
Bryant v. City of New York, 404 F.3d 128, 138 (2d Cir. 2005)
(noting that, in New York state court, arrestees are generally
held several hours, and sometimes as long as two days, before
arraignment); Williams v. Ward, 845 F.2d 374, 375-76 (2d Cir.
1988) (same).  On the record before the Court, there is nothing
to suggest that any legal procedures were abused after
plaintiff's arrest, and therefore the malicious prosecution claim
is dismissed.

## E.  Malicious Abuse of Process

Plaintiff brings a claim for malicious abuse of
process, arguing that defendants manipulated the legal system by
effecting his arrest so that they could meet quotas established
by the NYPD.  The only evidence plaintiff cites in support of the
alleged existence of a quota system, however, is irrelevant.
Defendants' motion for summary judgment as to the malicious abuse
of process claim is therefore granted.

### 1.  Applicable Law

A defendant can be held liable for malicious abuse of
process when he

> (1) employs regularly issued legal process to
> compel performance or forbearance of some act
> (2) with intent to do harm without excuse of
> justification, and (3) in order to obtain a
> collateral objective that is outside the
> legitimate ends of the process.

- 17 -

Savino, 331 F.3d at 76 (internal citation and quotations omitted). The crux of a malicious abuse of process claim is the collateral objective element. To meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose -- that is, "he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Id. For example, tampering with evidence is not considered abuse of process because the goal -- convicting the defendant -- is a legitimate use of process. See Chamberlain v. Lishansky, 970 F. Supp. 118, 122 (N.D.N.Y. 1997) ("Whatever personal satisfaction [defendants] derived from tampering with the evidence in [plaintiff's] prosecution, the objective of the prosecution itself was not outside the legitimate purpose of the process."). Fabricating assault charges to save one's job could be abuse of process, however, because "safeguarding one's own employment lies outside the legitimate goal of criminal process." Hernandez v. Wells, 01 Civ. 4376 (MBM), 2003 U.S. Dist. LEXIS 21146, at *27 (S.D.N.Y. Nov. 18, 2003).

## 2. **Application**

Defendants only challenge the collateral objective element of plaintiff's claim.

Plaintiff argues that he was arrested so that defendants could meet arrest quotas and thereby ensure the security of their jobs. Plaintiff's only evidence in support of his claim is news reports from 2006 describing quota systems the

police apparently instituted for traffic tickets.  This evidence
is irrelevant.  No reasonable jury could conclude that defendants
arrested plaintiff to meet quotas requiring them to make a
certain number of drug arrests based solely on news reports from
2006, which are hearsay in any event, indicating that the NYPD
had established quotas for traffic tickets.  Defendants' motion
for summary judgment is therefore granted as to the malicious
abuse of process claim.

## F.  Unlawful Search

          Plaintiff claims that he was strip-searched twice, once
on the street in the Bronx and again at the precinct.  Defendants
deny that a strip search took place on either occasion.
Conceding that a strip search conducted under the circumstances
plaintiff describes would have violated plaintiff's
constitutional rights, defendants move for summary judgment on
the ground that defendant has failed to identify the individual
officer who strip-searched him.  Defendants' motion is granted as
to Detectives Figueroa and Rivera and denied as to Detective
Marrero and Sergeant Clark.

### 1.  Applicable Law

          To succeed on a § 1983 claim alleging that a defendant
violated his Fourth Amendment rights, a plaintiff must prove that
the search was unreasonable.  See N.G. ex rel. S.C. v.
Connecticut, 382 F.3d 225, 233 (2d Cir. 2004).  Mindful that
strip searches have been described as "demeaning, dehumanizing,
undignified, humiliating, terrifying, unpleasant, embarrassing,

- 19 -

repulsive, [and] signifying degradation and submission," <u>Mary Beth G. v. City of Chicago</u>, 723 F.2d 1263, 1272 (7th Cir. 1983) (internal citation and quotations omitted), the Supreme Court has instructed courts to carefully evaluate the reasonableness of the search by considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (U.S. 1979).

As with any § 1983 claim, the personal involvement of the defendants is a prerequisite to recovering money damages. <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal citation and quotations omitted). Courts in this Circuit have, however, permitted § 1983 cases to proceed where an individual officer merely failed to intervene to prevent a violation of a person's constitutional rights. In <u>Anderson v. Branen</u> the Second Circuit held as follows:

> It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official. In order for

> liability to attach, there must have been a
> realistic opportunity to intervene to prevent
> the harm from occurring.

17 F.3d 552, 557 (2d Cir. 1994) (internal citations and
quotations omitted); accord Travis v. Village of Dobbs Ferry, 355
F. Supp. 2d 740, 752 (S.D.N.Y. 2005) (citing James by James v.
Sadler, 909 F.2d 834, 837 (5th Cir. 1990), for proposition that
police officer can be liable for failing to stop another
officer's violation of person's Fourth Amendment rights).

Whether an officer was personally involved in a
constitutional violation, or whether he can be held liable on a
failure to intervene theory, is generally a question of fact for
the jury to decide. See Williams v. Smith, 781 F.2d 319, 323 (2d
Cir. 1986) (holding that, in context of § 1983 claim, "personal
involvement is a question of fact"); Anderson, 17 F.3d at 557
("Whether an officer had sufficient time to intercede or was
capable of preventing the harm being caused by another officer is
an issue of fact for the jury unless, considering all the
evidence, a reasonable jury could not possibly conclude
otherwise.").

## 2. Application

Defendants do not appear to challenge that a strip
search conducted under the circumstances described in plaintiff's
complaint would constitute a Fourth Amendment violation. Instead
they direct their argument at plaintiff's failure to prove that
the individual defendants were personally involved in the
violation of plaintiff's constitutional rights.

- 21 -

Plaintiff has been unable to identify the officer who purportedly strip-searched him on the street and at the precinct. While he initially believed Detective Figueroa conducted at least one of the strip searches, during his deposition plaintiff did not identify Detective Figueroa from a photo array as the officer who performed the strip search.  (2008 Pl. Dep. at 6-7; Ex. N to Frommer Decl. (photo array)).[3]  Moreover, plaintiff's counsel does not even address Detective Figueroa in the portion of her brief discussing the strip search, which suggests plaintiff has abandoned the strip search claim as to Detective Figueroa.  See Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (citation omitted).  Because plaintiff has failed to show that Detective Figueroa was directly involved in the strip search or that he failed to intervene while others conducted the strip search, the claim is dismissed as to him.

As for Detective Rivera, there is no evidence that he was at the van or the precinct when plaintiff claims he was

---

[3]     At a conference held on April 18, 2008 I authorized defense counsel to show plaintiff a photo array and ask him to identify the man who strip-searched him.  At his deposition plaintiff was asked to identify the officer who had strip-searched him from a color array containing the photographs of six men, all wearing NYPD uniforms.  (2008 Pl. Dep. at 6-7; Ex. N to Frommer Decl. (photo array)).  Plaintiff stated that, although he was "not positively sure," the man in photo number six "resembles" the man who strip-searched him.  (2008 Pl. Dep. at 7).  The parties do not identify who the man in photo number six is, but Detective Figueroa is the man in picture number four.  (Figueroa Aff. ¶ 2).

strip-searched. Plaintiff acknowledges as much when he argues that Detective Rivera "may be held liable for the strip-search that took place at the precinct, because it occurred as a foreseeable result of the story he made up," but he fails to cite any case law supporting this theory, and the Court finds it too attenuated to support a strip search claim independent from the false arrest claim. The strip search claim is therefore dismissed as against Detective Rivera.[4]

As for Detective Marrero and Sergeant Clark, the strip search claim may proceed against them on a theory that they failed to intervene.[5] It is undisputed that Detective Marrero and Sergeant Clark were present when plaintiff was placed into the police van, and they may have been present at the precinct when plaintiff claims he was strip-searched again. If they witnessed another officer strip-searching plaintiff under the circumstances plaintiff describes, they had a duty to intervene. A reasonable jury could therefore find that they violated plaintiff's Fourth Amendment rights.

---

[4]     While the Court is dismissing the unlawful search claims as to Detectives Figueroa and Rivera, nothing in this decision precludes plaintiff from relying on the strip searches in proving damages at trial for his false arrest claim.

[5]     Plaintiff evidently does not believe either Detective Marrero or Sergeant Clark personally conducted the strip search, as the argument in his brief only focuses on their purported failure to intervene to prevent the strip search.

## G. **Denial of Right to a Fair Trial**

Plaintiff argues that defendants' actions in arresting him without probable cause deprived him of his constitutional right to a fair trial. Defendants argue that because the charges were dismissed against plaintiff before a trial, he cannot possibly have been deprived of a fair trial. There is, however, Second Circuit precedent supporting plaintiff's position, and I therefore deny defendants' summary judgment motion as to this claim.

### 1. **Applicable Law**

The Second Circuit has permitted a claim under § 1983 for violation of the right to a fair trial to proceed even where no trial took place. In Ricciuti v. New York City Transit Authority, the Second Circuit held that when a police officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." 124 F.3d 123, 130 (2d Cir. 1997). In Riccuiti, no trial ever took place; the charges against the plaintiff had been dismissed prior to the trial. See id. at 127 (noting that charges were dismissed pre-trial).[6]

---

[6]      Nor is a conviction required to bring a § 1983 claim for violation of the right to a fair trial. In Henry v. City of New York, the defendant police officers were accused of fabricating evidence that was subsequently used in the

## 2. **Application**

Here, defendants' principal argument is that plaintiff's claim cannot proceed because there was no trial. Defendants's argument ignores the fact that there had been no trial in Riccuiti, but the Second Circuit nonetheless let the § 1983 claim for violation of the right to a fair trial proceed. While Riccuiti appears to be the only case permitting such a claim to proceed even where a trial did not take place, it is binding precedent that I am obligated to follow.

Defendants also argue that there is no fabricated evidence here. Their argument seems once again to be premised on the notion that the Court should simply accept defendants' version of events, something that, as explained above, the Court cannot do.

I conclude that a reasonable jury could find defendants lacked probable cause to arrest plaintiff and forwarded false information to the Bronx district attorney, thereby violating plaintiff's constitutional right to a fair trial, even though a trial did not ultimately take place. Defendants's motion for summary judgment is therefore denied.

---

plaintiff's trial. No. 02 Civ. 4824 (JSM), 2003 U.S. Dist. LEXIS 15699, at **11-12 (S.D.N.Y. Sept. 5, 2003). In a subsequent civil suit based on the officers' conduct, the plaintiff brought a claim for violation of his right to a fair trial. The court explicitly rejected defendants' arguments that such a claim was unavailable because plaintiff was acquitted at trial. Id. at *12 ("[W]hile there is no constitutional right to be free from having evidence fabricated against an individual, the offense rises to a constitutional violation if one is deprived of his liberty because of the fabrication.").

## H. **Municipal Liability Claim**

Plaintiff asserts a claim against the City of New York under Monell v. Department of Social Services, in which the Supreme Court held that a municipal entity may be liable under § 1983 if the alleged constitutional violation was caused by the entity's "policy or custom." 436 U.S. 658, 694 (1978). At a conference held on April 18, 2008 I ordered discovery as to the Monell claim bifurcated pending motion practice on plaintiff's other claims. Defendants' motion for summary judgment as to the Monell claim is therefore denied as premature.

### CONCLUSION

To summarize the Court's holdings:

(1) Defendants' motion is denied as to the false arrest claim;

(2) Defendants' motion is denied as to the false arrest claim on the basis of qualified immunity;

(3) Defendants' motion is granted as to the malicious prosecution claim;

(4) Defendants' motion is granted as to the malicious abuse of process claim;

(5) On the unlawful search claim, Detectives Rivera and Figueroa's motions for summary judgment are granted, and the motions by Detectives Marrero and Clark are denied;

(6) Defendants' motion is denied as to the fair trial claim; and

        (7)   Defendants' motion is denied as to the <u>Monell</u>

claim.

        The parties are ordered to appear in Courtroom 11A on

March 13, 2009 at 10:00 a.m. for a pretrial conference.

        SO ORDERED.

Dated:    New York, New York
          February 5, 2009

                              DENNY CHIN
                        United States District Judge